# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

SAMMY WALL,

    Plaintiff/Counterclaim Defendant,

v.

CANON SOLUTIONS AMERICA, INC.

    Defendant/Counterclaimant.

Case No. 17-cv-4033-DDC-GEB

## MEMORANDUM AND ORDER

Plaintiff/counterclaim defendant Sammy Wall filed this lawsuit against defendant/counterclaimant Canon Solutions America, Inc. ("CSA") in the District Court of Shawnee County, Kansas. Doc. 1-1. Mr. Wall's Petition asserts various claims, including violation of the Kansas Wage Payment Act and breach of oral and written agreements. *Id.* CSA removed the case to federal court, asserting diversity jurisdiction under 28 U.S.C. § 1332. Doc. 1. CSA's Answer asserts two counterclaims: Count I, unlawful recording of communication in violation of Connecticut General Statutes § 52-570d; and Count II, invasion of privacy. Doc. 11. This matter comes before the court on Mr. Wall's Motion to Dismiss CSA's Counterclaim. Doc. 14. CSA filed a Brief in Opposition to Mr. Wall's Motion to Dismiss. Doc. 19. In its Opposition, CSA voluntarily dismissed Count II of its Counterclaim without prejudice. *Id.* Mr. Wall filed a Reply. Doc. 23. After considering the arguments made by both parties, the court denies Mr. Wall's Motion to Dismiss.

    **I.**    **Background**

The following facts are taken from CSA's Counterclaim (Doc. 11) and viewed in the light most favorable to it. *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) ("We accept as

true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [plaintiff].") (quotation omitted). CSA is a New York corporation with its principal place of business in Melville, New York. On January 1, 2013, Mr. Wall became an employee of CSA in its Topeka, Kansas office. Mr. Wall alleges that CSA failed to pay him compensation he is owed. CSA denies Mr. Wall's claim.

CSA asserts a counterclaim against Mr. Wall. CSA contends that Mr. Wall unlawfully recorded communications and invaded its privacy when Mr. Wall and his counsel recorded one or more telephone conversations with CSA's agent and representative, Anthony Marino. CSA and Mr. Marino were unaware that Mr. Wall was recording the conversations. Mr. Marino was located in Connecticut when the communications occurred. CSA seeks to recover damages, including attorneys' fees and costs. CSA also asks the court to order Mr. Wall and his agents to surrender the original and all copies of the recordings they made of CSA employees without their consent.

## II.     Legal Standard

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'" *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

Although the court must assume that the factual allegations in the complaint are true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 1263 (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

### III. Analysis

Mr. Wall moves to dismiss CSA's counterclaim asserting a violation of Connecticut General Statutes § 52-570d because the Counterclaim purportedly fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). CSA has invoked the court's diversity jurisdiction. In diversity cases, the court applies the law that would apply if the plaintiff had brought the suit in Kansas state court. *Snyder v. Am. Kennel Club*, 661 F. Supp. 2d 1219, 1229–30 (D. Kan. 2009) (first citing *Klaxon Co. v. Stentor Elec. Mfg., Co.*, 313 U.S. 487, 496 (1941); then citing *Butt v. Bank of Am., N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007)). Here, Kansas is the forum state, and Kansas applies the law of the place of the harm to claims arising under a state statute. *See Marten Transp., Ltd. v. Plattform Advert., Inc.*, No. 14-2464-JWL, 2016 WL 715765, at *9 (D. Kan. Feb. 22, 2016) (recognizing that Wisconsin law ordinarily would govern the statutory claims in this diversity action because Wisconsin was the place where the financial harm was sustained); *see also Johnson v. Simonton Bldg. Prod., Inc.*, No. 08-2198-CM-DJW,

2011 WL 251435, at *8 (D. Kan. Jan. 26, 2011) (concluding that claims brought under the Trade Secrets Acts of Minnesota, Kansas, and West Virginia were governed by Minnesota law because "plaintiff's financial injury was necessarily felt in Minnesota.").

Here, CSA asserts Mr. Wall unlawfully recorded conversations with Mr. Marino. Mr. Marino was located in Connecticut when the conversations occurred. Thus, Connecticut is the place of harm, and this conclusion means that Connecticut law controls.

Mr. Wall contends that applying Connecticut law in this case violates Kansas public policy. Doc. 23 at 2. Indeed, Kansas courts "will not apply the law of another state to a claim if that other state's law is contrary to Kansas public policy." *See Raskin v. Allison*, 57 P.3d 30, 33 (Kan. Ct. App. 2002). This exception to the choice of law doctrine requires the public policy to be one "so thoroughly established as a state of public mind so united and so definite and fixed that its existence is not subject to any substantial doubt." *Riddle v. Wal-Mart Stores, Inc.*, 998 P.2d 114, 119 (Kan. Ct. App. 2000) (citing *Palmer v. Brown*, 752 P.2d 685 (Kan. 1988)). Kansas courts follow "the prevailing view that the public policy exception in conflict of law theory should be *narrowly limited*." *Raskin*, 57 P.3d at 34 (emphasis added).

Mr. Wall identifies no public policy interests contravened by Connecticut General Statutes § 52-570d. The Kansas statutes differ from Connecticut law because they require one-party consent to telephone recordings. But, other than pointing out this mere difference, he provides no reason why Connecticut's two-party consent law under § 52-570d violates Kansas public policy. Therefore, the court applies Connecticut law.

### A. Mr. Marino's Section 52-570d Claim is Not Assignable.

Mr. Wall claims that Mr. Marino cannot assign his statutory claim for unlawful recording of communication to CSA. In support of this argument, Mr. Wall cites *Dodd v. Middlesex*

4

*Mutual Assurance Co.* for the proposition that "the common law does not permit assignments of causes of action to recover for personal injuries." 698 A.2d 859, 864 (Conn. 1997) (citing R.D. Hursh, *Assignability of Claim for Personal Injury or Death*, 40 A.L.R.2d 500 (1955)). The Connecticut courts have long recognized this rule. *See Whitaker v. Gavit*, 18 Conn. 522, 526 (1847).

CSA asserts that Mr. Wall cannot rely on *Dodd* because it fails to distinguish between the assignability of general tort claims, contract claims, and statutory claims. CSA argues Mr. Marino's claim, as a purely statutory claim, is assignable. The Connecticut Supreme Court has recognized that tort claims, contract claims, and statutory claims differ in terms of assignability. *See Stearns & Wheeler, LLC v. Kowalsky Bros., Inc.*, 955 A.2d 538, 543 (Conn. 2008). Assigning contract claims is permissible while assigning tort claims is not. *Id.* at 542. Some claims, however, are "purely statutory and cannot be characterized either as tort claims or as contract claims." *Id.* at 543. In *Stearns*, the Connecticut Supreme Court concluded that plaintiff's claim under the Connecticut Unfair Practices Act (CUTPA) was a purely statutory claim. *Id.* The court also held that plaintiff could not assign its CUTPA claim because to do so would contravene public policy. *Id.*

The parties do not cite any Connecticut case that has decided whether a claim arising under § 52-570d—the statute invoked here—is a tort claim, contract claim, or purely statutory claim. The parties also never cite any Connecticut case that has decided whether a § 52-570d claim is assignable. The court has located no such cases in its own research. Thus, the court must predict how the Connecticut Supreme Court would decide this issue if presented with it.

The court predicts that the Connecticut Supreme Court would conclude that § 52-570d is an unassignable tort claim. A tort is defined as "a civil wrong, other than breach of contract, for

5

which a remedy may be obtained." *Tort*, *Black's Law Dictionary* (10th ed. 2014). Although § 52-570d is a statutory claim, a person also can bring an action to obtain a remedy under the common law for invasion of privacy under the same facts asserted to support the statutory claim.

The Connecticut Supreme Court first recognized tort claims for invasion of privacy in the 1980s. *See Goodrich v. Waterbury Republican-Am., Inc.*, 448 A.2d 1317, 1328 (Conn. 1982) ("[P]rivacy is a basic right entitled to legal protection."). The court recognized four distinct kinds of invasion of privacy claims. *Id.* at 1329. "The four categories of invasion of privacy are set forth in the 3 Restatement (Second), Torts § 652A as follows: (a) unreasonable intrusion upon the seclusion of another; (b) appropriation of the other's name or likeness; (c) unreasonable publicity given to the other's private life; or (d) publicity that unreasonably places the other in a false light before the public." *Id.* Connecticut courts have held that recording private phone conversations without all parties' consent is an unreasonable intrusion upon the seclusion of another. *See Caro v. Weintraub*, 618 F.3d 94, 101 (2d Cir. 2010) (applying Connecticut law and finding the act of recording a private conversation could impose liability on defendant under the common law tort for invasion of privacy); *Vasyliv v. Adesta, LLC*, No. CV106011737S, 2010 WL 5610901, at *3 (Conn. Super. Ct. Dec. 20, 2010) ("A secret video recording of a private conversation can certainly be considered an intrusion upon one's seclusion or their private affairs or concerns."); *WVIT, Inc. v. Gray*, No. CV 950547689S, 1996 WL 649334, at *4 (Conn. Super. Ct. Oct. 25, 1996) ("[E]mployees do have a reasonable expectation that discussions will not be secretly recorded by fellow employees with whom they are chatting."). So, Mr. Marino also can assert a claim under the common law tort of invasion of privacy based on the same facts asserted in Counterclaim to support the § 52-570d claim. The court thus concludes that the Connecticut

Supreme Court would find that a claim arising under § 52-570d is comparable to a tort claim and thus it would not permit assignment of the claim.

Also, the fact that CSA is asserting a violation of Connecticut statute does not mean it is a purely statutory claim. The Connecticut Supreme Court has acknowledged that "statutorily created tort[s]" "[have their] origins in the common law . . . ." *Ford v. Blue Cross and Blue Shield of Conn., Inc.*, 578 A.2d 1054, 1060 (Conn. 1990) (rejecting argument that plaintiff did not have a right to a jury trial because the plaintiff's cause of action under a state statute was purely statutory); *see also Considine v. City of Waterbury*, 905 A.2d 70, 81 (Conn. 2006) (finding statute was an attempt to codify municipal common-law tort liability); *Yale Diagnostic Radiology v. Estate of Fountain*, 838 A.2d 179, 185 (Conn. 2004) (observing that Connecticut General Statute § 46b-37(b)(2) codifies common-law rule that "both parents are primarily responsible for providing necessary goods and services to their children"); *Gerrity v. R.J. Reynolds Tobacco Co.*, 818 A.2d 769, 774 (Conn. 2003) (concluding that purpose of product liability act was in part to codify the common law of product liability).

Section 52-570d has its origins in the common-law tort for invasion of privacy. Legislative debates attendant to the passage of § 52-570d demonstrate a key purpose of the bill—to protect personal privacy. *Tarbox v. Tarbox*, No. CV044000313S, 2005 WL 1097228, at *2 (Conn. Super. Ct. Apr. 6, 2005) (citing 33 H.R. Proc., Pt. 30, 1990, p. 10,524). The court thus concludes that, if presented with this question, the Connecticut Supreme Court would find that Mr. Marino's claim for unlawful recording of communication under § 52-570d is a tort action and therefore cannot be assigned to CSA.

Even if the court concluded that § 52-570d is a purely statutory claim, the claim is still not assignable because the statute limits remedies to "person[s] aggrieved." Conn. Gen. Stat. §

7

52-570d(c).  Allowing assignment of the claim to someone who is not aggrieved would "undermine the well-defined legislative policy limiting remedies" to the person aggrieved. *Stearns*, 955 A.2d at 544.  Thus, the court concludes that Mr. Marino cannot assign his § 52-570d claim.

### B. CSA Has a Viable Section 52-570d Claim.

Even though Mr. Marino cannot assign his § 52-570d claim to CSA, the claim survives the Motion to Dismiss because CSA asserts its own claim under § 52-570d.  Section 52-570d states "[a]ny person aggrieved by a violation [of this section] may bring a civil action in the Superior Court to recover damages, together with costs and a reasonable attorney's fee."  Conn. Gen. Stat. § 52-570d(c).  The word "person" includes "companies, corporations, public or private, limited liability companies, societies and associations."  Conn. Gen. Stat. § 1-1(k).  Indeed, Connecticut courts have recognized a corporate party's right to assert violations of § 52-570d.  *See Pianin v. Thru-Way Shopping Ctr., LLC*, No. FSTCV010186828, 2005 WL 2277140, at *3 (Conn. Super. Ct. Aug. 24, 2005) (finding a limited liability company and its agent showed plaintiff had violated § 52-570d).

Mr. Wall asserts that CSA only can recover on this claim if it can allege damages in its own right.  Doc. 23 at 6.  But, whether or not CSA can prove it sustained any injury from Mr. Wall's actions is an issue beyond the scope of this motion.  Because CSA can assert its own § 52-570d claim, CSA has stated a claim upon which relief can be granted.

### IV. Conclusion

For the reasons explained above, the court concludes that CSA's Counterclaim sufficiently states a claim for relief and survives Mr. Wall's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff/counterclaim defendant Sammy Wall's Motion to Dismiss Counterclaim (Doc. 14) is denied under Rule 12(b)(6).

**IT IS SO ORDERED.**

**Dated this 5th day of September, 2017, at Topeka, Kansas.**

<u>**s/ Daniel D. Crabtree**</u>
**Daniel D. Crabtree**
**United States District Judge**